## Elzey G. Burkam v. Charles A. Trowbridge impleaded with others.

In a notice of the dishonor of commercial paper, no technical phrases are necessary, but it is only required that the terms used be such as fairly and naturally to lead a mind of ordinary intelligence to the idea that the paper has been presented at maturity and dishonored, and that the party notified is looked to for payment.

A notice to a party, dated on the day of the maturity of an inland bill, and stating that the bill was on that day, by the notary who signed the notice, protested for non-payment after due demand and refusal, and that the holder looked to the party notified for payment, is sufficient.

The case of *Platt v. Drake*, 1 *Doug. Mich.* 296, (followed by *Newberry v. Trowbridge*, 4 *Mich.* 391) doubted, and, *it seems*, overruled.

*Heard April 11th. Decided May 1st.*

Error to Wayne Circuit.

The action was against Trowbridge as drawer and endorser, and the Collins Iron Company as acceptor, of a bill of exchange, and the question in the case was as to the sufficiency of the notice to Trowbridge, of which the following is a copy, and which correctly describes the bill.

"CINCINNATI, October 15, 1858.

Mr. C. A. Trowbridge: Take notice that a bill of exchange for $1304,22, drawn by you upon Collins Iron Company, Detroit, Mich., and accepted by said Co. in favor of yourself or order, dated Cincinnati, April 12, 1858, payable six months after date at the office of E. G. Burkam & Co. Cincinnati, O., and endorsed by you, was this day protested by the undersigned, Notary Public, for non payment, after due demand and refusal of payment, and the holders therefore look to you for payment.

DAN. POTTER, Notary Public."

The Circuit Court held the notice insufficient, and Trowbridge had judgment.

*Walker & Russell*, for plaintiff in error were not heard.

*H. K. Clarke*, for defendant in error, relied principally on *Platt v. Drake*, 1 *Doug. Mich.* 296, and *Newberry v. Trowbridge*, 4 *Mich.* 391.

CAMPBELL J.:

This case presents but a single point, concerning the sufficiency of a notice of dishonor of an inland bill, under the general rules of law applicable to such paper, which is governed by the general law merchant in the absence of proof that the laws of Ohio have varied it.

The notice before us is dated on the day of the maturity of the paper, and states it was on that day, by the Notary who signed it, protested for non-payment after due demand and refusal of payment, and that the holders look to the defendant for payment. The bill is fully described, and the only question is whether, by this language, the defendant was legally informed of its dishonor, so that when the facts of presentment at maturity and non-payment are also shown, he can be regarded as having notice of those facts as existing or claimed to exist, and so be held responsible. The object of this notice has always been held to be, merely to bring home to the party sought to be charged, information that the paper has been presented at maturity and dishonored, and that he is looked to for payment. And accordingly no technical phrases are necessary, but it is only required that the terms used be such as fairly and naturally to lead the mind of a person of ordinary intelligence to this idea. The notices may be given as well by private holders as by commercial officers, and the use of terms is not to be subjected to technical criticism, but they must be interpreted by common sense and common usage, unless some special reason

exists to the contrary in a given case. No court is at liberty to strain the meaning of terms so as to render them senseless and nugatory, when a sensible meaning is reasonably apparent.

When an indorser, knowing, as he is bound to know, the nature of his liability, receives within the proper time, and in a proper manner, a notice claiming a liability against him on a bill properly described, there is certainly no very good reason why he should be allowed to shut his eyes to any further facts plainly appearing, or to assume that although fairly understood, the words used convey a clear assertion of the facts completing his liability, the notice was nevertheless not designed for any known legal purpose whatever, and was meant as an idle ceremony. This would not be in accordance with the fairness which should characterize all commercial rules, as well as all other rules of human conduct. And no court has laid down any general rules which would countenance the rejection of any notice which fairly and naturally admits of but one construction, and informs the party charged of the necessary facts, whether directly or inferentially. But there have been some cases in which the application of these rules has been unreasonably narrowed.

It is claimed that the case of *Platt v. Drake*, 1 *Doug. Mich.* 296 (subsequently recognized as *res adjudicata* in *Newberry v. Trowbridge*, 4 *Mich.* 391), has determined that the term *protest* is absolutely without meaning, when used in connection with inland bills, and therefore that a notice of protest is also unintelligible, and conveys no idea to the recipient, which he can be supposed to comprehend. The ruling in that case undoubtedly was based entirely upon that technical use of terms; but the court, through misapprehension, was led to overlook a practice which was sanctioned not only by usage, but by the express statutes of the State, as well as of the Territory. The laws recognizing the common usage of making protest as well of

notes and inland bills as of foreign bills (which usage is certainly nearly or quite as old as the negotiability of promissory notes), regulated the fees of notaries for making these protests as well as for giving notices:— R. L. 1820, p. 365: R. L. 1827, p. 198; R. L. 1833, p. 255; R. S 1838, p. 568: courts reading these statutes, could not assume that they were nugatory, because protests were unnecessesary. They would be obliged to give them their usual and ordinary meaning, and recognize them as the expression of an idea perfectly familiar in every commercial community. In the absence of any statute it is always presumable that words in common use may be safely resorted to in business documents. And it is very manifest that in deciding *Platt v. Drake*, the attention of the court was not called to the fact that these statutes existed, which were certainly as binding as any other laws, upon all the courts of the State, and would of course have been followed. The statutes have since gone further, and now in some cases make notarial certificates, concerning all kinds of negotiable paper, more available in evidence than notarial acts relating to foreign bills were by the commercial law. R. S. 1846, p. 79, (C. L. p. 215). But in construing these statutes also, we are necessarily compelled to recur to common usage for the meaning of the terms, as in the other cases. And the overwhelming mass of authorities sustaining notices of protest as sufficient, is based entirely upon this recognized usage. The protest of a note includes, by natural inference, the timely demand and refusal which alone could justify it; and a notice of protest therefore is an inferential statement of these. In the case before us, the demand and refusal are directly mentioned. Such a notice is too plain to mislead any one, and was therefore sufficient. The court below erred in holding it invalid, and the judgment must be reversed, and a new trial granted.

The other Justices concurred.