VAN RENSSELAER CROMER v. GEORGE W. PLATT AND .
EDMUND F. PLATT.

*Notice of Dishonor.*

Notice of dishonor need not be given by a notary; it may be given by any holder for himself and in his own language; but it is not binding, whatever its form, unless the paper has been legally dishonored; and every endorser is presumed to know what action will bind him and what will not.

A letter addressed by the holders of a note to the endorser, describing the note and stating that it was unpaid and that the holders looked to him for payment, is a sufficient notice of dishonor.

The holders of a note demanded payment from the endorser, who replied that he had not expected to have it to pay, and that it was impossible to pay it at present. *Held*, insufficient as a promise to pay.

Error to Berrien.    Submitted April 18.    Decided June 20.

ASSUMPSIT against the endorser of a promissory note. On failure to find the maker, the holders sent to the endorser the following letter: "St. Joseph, Mich., February 4, 1873.    Mr. Cromer—Dear Sir: We hold a note given by Thos. A. Bunbury, dated St. Joseph, July 1st, 1872, payable seven months after date to your order, for one hundred and fifty dollars with interest at ten per cent. The note being endorsed by you, and not paid at this date, we look to you for payment of the same.    Yours resply, Platt & Brother."    The following letters from the endorser were admitted in evidence under objection: "March 18th, 1873.    Mr. Platt: I received your letter.    I was in hopes that Mr. Bunbury had settled it up before this.    I would like to have you write to him about it and see what he says. He is able to pay, and think he will.    V. R. Cromer." "April 30, 1873.    Mr. Platt: Your letter is at hand requesting me to pay that note immediately as Mr. Bunbury has run away.    I did not expect to have that note to pay, as Mr. Bunbury was able to pay it, and I have

made use of the money I brought with me. Therefore it is impossible for me to pay it at present. V. R. Cromer." The court below tried the case without a jury and gave judgment for the plaintiffs, and defendant brought error.

*Wm. R. Lyon* and *E. Bacon,* for plaintiff in error. To charge an endorser demand must be made from the maker at maturity, and notice of dishonor given to the endorser. *May v. Coffin,* 4 Mass., 341; *Pierce v. Cate,* 12 Cush., 190; *Wheeler v. Field,* 6 Metc., 290. The notice must cover the facts of presentment and demand, and the refusal to pay, and must distinctly show that the note is dishonored. *Platt v. Drake,* 1 Doug. (Mich.), 301; *Cicotte v. Morse,* 8 Mich., 428; *Spies v. Newberry,* 2 Doug. (Mich.), 426; *Pinkham v. Macy,* 9 Metc., 174; *Townsend v. Lorain Bank,* 2 Ohio St., 355; Story on Prom. Notes, §§ 348, 350; Redf. & Big. Leading Cases on Bills and Notes, 358–375; Edwards on Bills, §§ 470–1; *Strange v. Price,* 10 Ad. & E., 125; 1 Pars. on Notes & Bills, 470; *Artisans' Bank v. Backus,* 36 N. Y., 100; *Nailor v. Bowie,* 3 Md., 251; *Reynolds v. Appleman,* 41 Md., 615; *Routh v. Robertson,* 11 Sm. & M., 382; *Pahquioque Bank v. Martin,* 11 Abb. Pr., 291; *Hartley v. Case,* 4 B. & C., 339; *Solarte v. Palmer,* 1 Bing. N. C., 194. If the maker has absconded, the notice must show it. *Gilbert v. Dennis,* 3 Metc., 498–9. In case of a note payable generally, simple notice of non-payment is not notice of dishonor. Edw. on Bills, 593; *Dole v. Gold,* 5 Barb., 490.

*N. A. Hamilton* and *O. W. Coolidge* for defendants in error. A notice that states the fact of non-payment and that the holder looks to the endorser, is sufficient (*Mills v. Bank,* 11 Wheat., 431) or that puts the party on inquiry. *Chewning v. Gatewood,* 5 How. (Miss.), 552; *Field v. Thornton,* 1 Ga., 306. It need not set forth that a demand has been made or that the maker has absconded. *Burkam v. Trowbridge,* 9 Mich., 209; *Clark v. Eldridge* 13 Metc., 96; *Robson v. Curlewis,* 2 Ad. & El. [N. S.] 421; *Hedger v. Steavenson,* 2 M. & W., 799; *Grugeon v. Smith,* 6 Ad. & El.,

499; Redf. & Big. Leading Cases on Bills & Notes, 358, and cases cited; *Paul v. Joel*, 4 H. & N., 355; *Bailey v. Porter*, 14 M. & W., 44. The authority of *Solarte v. Palmer*, is shaken by *Everard v. Watson*, 1 El. & Bl., 801. Cromer's letters were a waiver of notice and recognition of liability. *Parsons v. Dickinson*, 23 Mich., 56.

CAMPBELL, J. This was a suit against an endorser, and his liability, upon the facts found, depended on the sufficiency of the notice of dishonor, inasmuch as the letters relied on as recognitions of liability are equivocal and not enough to indicate any promise to pay.

The notice was full in every other respect except as to the fact of demand and refusal. As to these it simply declared that the note was unpaid, and the holders looked to the endorser for payment.

This left the facts of presentment and refusal to inference. The question is whether a notice of this kind is valid.

There are cases both numerous and respectable which have held such a notice insufficient. No particular form of notice can be laid down as requisite, and the discussion has always been concerning the sufficiency in each case to inform the endorser of what was claimed as fixing his liability.

We think that altogether too much force has been given to technical phrases in such notices. A notice, whatever be its form, cannot bind unless the paper has been legally dishonored, and every endorser must be presumed to know what action will bind him and what will not. Notice need not be given by a notary. Any holder may give it for himself and in his own language. Negotiable paper is used by all classes of men and for all manner of purposes, and in a large class, if not in the majority of cases, credit is given to the endorser and he knows it. He is entitled to have his liability established by the necessary measures. But there is no reason why courts should strain matters, as they often have done, to discharge persons from liability when they have not been misled in any way by the notices sent

them.   As a matter of fact every endorser who receives a notice of non-payment, and that he is looked to for payment, knows that such a notice would not have been sent unless it was supposed the proper steps had been taken to charge him.   He learns this as well from one form of notice as from another, and when courts have theorized upon the forms of notice, and assumed that endorsers scan with the nicety of advocates every phrase and turn of expression, they assume what is not true in fact, and impose upon negotiable paper what seem to be unreasonable restrictions. The value of such a medium of business convenience is injured by every needless technicality, and honest holders of such paper, who have not read the law reports, are practically defrauded.

We think the notice in the present case was sufficient. The early case of *Platt v. Drake*, 1 Doug. (Mich.), 301, was overruled in *Burkam v. Trowbridge*, 9 Mich., 209, where we remarked upon the danger of over technical refinements in these matters.   The more liberal doctrine seems to us the correct one.   And while no doubt many cases, and possibly a majority of those reported hold otherwise, we do not think the popular usage has been changed by them, or that justice would be furthered by such a change.

The judgment must be affirmed, with costs.

COOLEY, C. J. and MARSTON, J., concurred.

GRAVES, J. (dissenting).   Defendants in error as holders sued the plaintiff in error as endorser of a promissory note dated St. Joseph, July 1st, 1872, made by Thomas A. Bunbury for $150 and payable seven months after date, with interest at ten per cent.

The circuit judge tried the cause without a jury and made a special finding of facts and gave judgment thereon in favor of defendants in error.

The plaintiff in error complains of a ruling in admitting evidence, and also insists that the facts found do not support the judgment.   The point upon the introduction of evidence does not appear to be valid.

The situation of the case made it proper to ascertain whether upon all the correspondence, Cromer had not obviated his objection that the notice to him was insufficient and as a consequence had rendered the objection and the grounds of it immaterial. *Third National Bank of Boston v. Ashworth*, 105 Mass., 503, and cases cited. The item of proof objected to was a proper one in that connection.

The point of importance in the cause, as the record is now framed by the shape of the finding, relates to the sufficiency of the notice found to have been given to Cromer.

There is no finding that Cromer waived any right or excused the taking of any step by law necessary to fix his liability as endorser, and the judgment against him rests upon the facts as found in regard to what things were done to bind him.

The finding states that when the note became due the defendants in error proceeded to the last place of residence of Bunbury, the maker, to demand payment, but that Bunbury had absconded and could not be found, and that on the 4th of February, 1873, they notified Cromer, who was stopping in a foreign State, that they held the note, that it had not been paid, and that they looked to him for the payment of the same. The note was payable generally and not at a bank or other specific place, and Cromer insists that the notice found to have been given to him was not sufficient to charge him. It is material to bear in mind that the question here is not upon the sufficiency of the facts preceding notice and on which the notice must rest, but it is upon the sufficiency of the notice itself. However clear it may be that the requisite circumstances existed to enable defendants in error to fix Cromer with liability through a proper notice, still, the existence of such circumstances could have no force to effectuate the result unless proper notice is found to have been given. Grant that the finding shows the note was dishonored, Cromer's liability is not made out at all unless it is found that he was notified of the *dishonor*. And no particular form of words is necessary to constitute a good notice. But it should be so worded as according to common understanding to con-

vey the idea that the note has been dishonored and that the party addressed is to be held for payment. Broom's Com., 469, 470.

In case there is no dispute about facts the sufficiency of the notice is a question of law, and that as far as practicable the rules of decision should be the same in all commercial countries, and especially among the states of the Union, is so evident that conformity has been recognized as almost a controlling principle. *Benedict v. Cowden,* 49 N. Y., 396.

This court has given strong proof of its respect for this consideration.

In *Burkam v. Trowbridge,* 9 Mich., 209, it expressly overruled two previous cases to bring the doctrine in this State concerning the requirements of notice into harmony with the doctrine settled in the leading commercial States. The same policy requires us to avoid departure in this case from the established course as to the purposes of notice and the meaning of such a notice as is found to have been given to Cromer.

According to the finding as already stated the notice informed Cromer that defendants in error held the note, that it was unpaid and that they looked to him for payment, and it is objected that this did not suggest that the note had been dishonored. Whether it did or did not must depend upon the construction due the terms preceding the declaration that Cromer was looked to for payment. All the authorities require that it should some way appear from the notice that the party addressed is thus looked to, and the declaration of the fact has no force to supply the place of a notification of dishonor, or to convey the sense of such a notification.

Both facts are required to be conveyed in order to fix the liability and the communication of one is not a communication of the other. Hence if the notice which is found to have been given is to be considered as notifying that the note had been dishonored, it must be upon the ground that the statement that it was unpaid worked that result, because the finding exhibits no other ingredient in the notice to convey the idea.

The question then is reduced to this, was the statement that the note had not been paid a notice of dishonor?

If it was not, then the notice found to have been given was not sufficient to bind Cromer and the facts do not support the judgment. The question is one of law, and if there be a settled rule in regard to it in our commercial states it ought to be followed for the sake of uniformity. Any opinion drawn from abstract reasoning against the fitness of the rule should yield to policy and not be insisted on in favor of an exceptional and discordant regulation.

On referring to elementary writers we find it stated as something established in mercantile law that a statement in the notice that the note is unpaid is not sufficient in case it is payable generally, to intimate that it has been dishonored. 2 Dan'l on Negot. Inst., §§ 982, 983; Edw. on B. & N., 470, 471; Story on Prom. N., § 350; 3 Kent, 108 and n. "c.," 105 and n,

And the proposition is most fully sustained by the decisions. *Gilbert v. Dennis,* 3 Met., 495; *Pinkham v. Macy,* 9 Id., 174; *Clark v. Eldridge,* 13 Id., 96; *Dole v. Gold,* 5 Barb., 490; *Taylor v. Snyder,* 3 Denio, 145; *Page v. Gilbert,* 60 Me., 488; *Administrator of Townsend v. Lorain Bk. of Elyria,* 2 Ohio St., 345; *Solarte v. Palmer,* 2 Clk. & Fin., 93; *Strange v. Price,* 10 Ad. & El. 125; *Furze v. Sharwood,* 2 Ad. & El. (N. S.), 388; *Hartley v. Case,* 4 Barn. & Cress., 339.

The general rule of interpretation promulgated by the House of Lords in *Solarte v. Palmer,* has been much criticised and questioned both in England and this country, and is here considered by a great weight of authority as too strict; but at the same time it is universally admitted, first, that the notice must convey the idea that the instrument has in fact been dishonored whatever the circumstances of dishonor; and second, that a statement that the instrument remains unpaid is not sufficient to convey such idea.

Hence according to the law as settled in England and in the commercial states of the Union the notice found to have been given to Cromer was not good to fix him with

liability on this note, a note not payable at any specific place, and we cannot sustain the notice without adopting an eccentric course and introducing confusion.

In my opinion the judgment should be reversed and one entered here for plaintiff in error.